Good afternoon, Your Honors. May it please the Court, my name is Ron Sung, and I'm with the Federal Public Defender's Office. I represent Jerry Pough. I'd like to reserve two minutes for rebuttal, please. The Nevada State Court's decision was an unreasonable determination of facts and an unreasonable application of established federal law. To waive counsel under FREDA v. California, the Court needed to ensure that Pough's mental, had a rational understanding that, quote, he knows what he's doing and his choice is made with eyes open, unquote. The Nevada State Courts, however, failed to consider how Pough's mental illness clouded his mind because they conducted inadequate FREDA canvases. Now during both these FREDA canvases, the judges ignored Pough's prior incompetency determinations, right? Well, how can you say they ignored it when they knew of it? Well, Your Honor, they should have known that he was at least borderline incompetent. Both of these canvases occurred right after Pough came back from competency court. So it was the elephant in the room, his mental illness. Oh, excuse me, like that's what they were focusing on. He had extensive focus on whether he was competent to stand trial and on whether he was competent to cause his attorney to be relieved. And it looks like nothing was ignored. The Court just decided he was competent to get rid of his lawyer. Respectfully, I would disagree that. I mean, there are expert opinions on both sides, as I recall. I think the judge considered expert opinion. And there are a couple of experts who reported to the Court that he was indeed competent to do that. And those were during his competency hearings, Your Honor. But during his FREDA canvases, right, whether he could knowingly and intelligently waive his right to counsel. Wasn't it the same judge, though? So he was familiar with everything that had come up? No, Your Honor. Nevada has a weird system in which, for competency court, it is a separate judge that makes the findings. But there was still testimony and the records were available, right? The records were available. The competency hearing records were. Yeah, and I mean, I've read through these and there certainly were issues that your client was having. But like, for example, when you look through all of the extensive, is it Lakes Crossing? Lakes Crossing, Your Honor. You look through the extensive Lakes Crossing reports. I mean, I know that there was some contrary testimony. But I mean, all of these lack an Axis I diagnosis or a relevant Axis I diagnosis. I mean, these are very thorough reports. Well, Your Honor, two things on that. First is that when the court asked, the state FREDA canvass courts asked Mr. Poe, quote, before your incarceration, you've never been treated for mental health issues, correct? And Poe's response was, well, these are just issues with life. This represents two things, Your Honor. One, the court misread the reports. There were some reports later on after he was at Lakes Crossing, after he received treatment. But that was the trial court. That was the trial court, correct? This was the trial court, Your Honor. But the Nevada Supreme Court did, from their opinion, look at all of those records, did it not? Yes, Your Honor. And on appeal, the Nevada Supreme Court found that Poe likely had mental illness. Okay, but isn't that the decision we're reviewing? Yes, Your Honor. Okay. So if the Nevada Supreme Court looked at it, what mistake did they make? The key mistake, Your Honor, was that when the Nevada Supreme Court reviewed this, they said that Poe likely suffered from mental illness and they chastised the trial court for failing to review the medical records properly, and accepting Poe's lies. I just mentioned earlier that question about whether or not he had a history of mental illness. Poe flat out lied. He said he did not have a history of mental illness. But I mean, the Supreme Court says your client was sent to Lakes Crossing, but the ensuing report concluded he was confident and not schizophrenic. The court, in some detail, goes through with what the facts are. And how are we to find that this is either an unreasonable determination of the facts or an unreasonable application of binding Supreme Court precedent? Where can we find that in this relatively thorough canvas? The key phrase, the key flaw of the Nevada Supreme Court's decision was that they were deferred to the state courts for a canvas. They were deferred to the state courts for what? They deferred to the state courts for a canvas. How is it flawed? It was flawed in three ways, Your Honor. They deferred to the ultimate decision of the state court, but they didn't defer to the trial court's analysis. They, I guess they didn't really specify on that front, Your Honor. Well, that's what's key. Seems to me that's what's key here. Well, and I would say this too. There are three major flaws with the credit canvases to begin with, right? So for one, I mentioned earlier, there was no discussion about his borderline incompetency. There was basically one question asked, did you have a history of mental illness? And second, were you on medication? And they basically just glossed over that. So in hearing your argument, you're going back to the competency determination. No, I'm not. I'm talking about this is what these are the questions that were asked in the FREDA canvases. This is a FREDA analysis? Yes, Your Honor. Okay. The knowing and voluntary. Yes, Your Honor. All right. And during the FREDA canvases. I don't understand what you mean by gloss over. If you mean that they said something or failed to say something that they had to say, such that the 2254 requirements are satisfied. Could you be specific? Show me the language you're looking at. I mean, the way I look at it is they say after review of the whole record below, nothing in the record suggests that puffs or pose mental illness kept them from understanding the risks of self-representation or otherwise making a knowing voluntary and intelligent decision. And then they have this footnote on pages two and three, where they make a suggestion to the 8th Judicial District Court to take steps that would improve their understanding of the file in mental illness cases generally. But I don't understand what you mean by gloss over. As far as I can tell, they studied everything and they reached that conclusion. And I'm trying to figure out why it is an unreasonable one or contrary to Supreme Court holdings. And despite the deference, we're required to afford it under Harrington versus Richter. Right. And in response to that, the State District Court, they misread Poe's medical history. Their question to Poe was. We're not reviewing the District Court. We're reviewing the Supreme Court. Right. And then the Supreme Court. And we're not really reviewing it in the sense that we ordinarily review a court. We do not have the authority to review it. All we do is decide whether it was contrary to or an unreasonable application of Supreme Court holdings. The Supreme Court's decision was an unreasonable determination of facts because they specifically stated that they deferred to the State District Court's findings in the Freddick campus. And that's one of the lines in there, Your Honor. The Freddick campuses were inadequate for a number of reasons, like I described earlier. I'm looking for the line that you're relying on. Tell me where it is. I can bring it over really quick. It says on ER 31 in the middle, giving deference to the lower court's decisions. Can you? I'm sorry, counsel. That is an appropriate way to cite it. But can you tell me what page of the Supreme Court's order it's on? Oh, it's on page four. Thank you. Go ahead. Sorry. I'm sorry. It's page three on the bottom. Okay. It's like the paragraph. Please. Yeah. The big paragraph. And then on top of that, it says the last sentence, giving deference to the lower court's decisions, we conclude they did not err. Well, it's on fact-finding. I'm sorry. I couldn't hear that, Your Honor. Is that on fact-finding, clearly erroneous review? Is that what the deference means, that they're reviewing fact-finding below for clear error? Yes, Your Honor. I believe so. Yes. And...  I'm sorry. I couldn't hear you, Your Honor. Can't they review fact-finding below for clear error? Well, it didn't seem like it, because if they're deferring to the lower court's decision, they're not doing a de novo review. Oh, I'm missing this. You said on the bottom of page three? On the bottom of page three, yes. Here it is. Yeah. Giving deference to the lower court's decisions, we conclude that they did not err. That's an abuse of discretion standard that seems pretty normal. But above that, in the paragraph, they specifically say your client was canvassed about his desire to represent himself. Each time he stated that he understood the risks of self-representation. Nothing in the record suggests his mental illness kept him from understanding the risks of self-representation or otherwise making a knowing, voluntary, and intelligent decision. So they state that. Before then, giving the Nevada standard, giving deference, we conclude they did an error. But they're talking about their own review of the record. But, Your Honor, the problem is that the canvasses themselves were inadequate. They didn't go through what needed to be discussed, including Poe's mental illness. And they ignored an obvious red flag when Poe described that he wasn't taking his medication. This happened in both Freda canvasses. How do you know they ignored it? It wasn't It seems to me they are reviewing for clear error, as is common in pretty all appellate tribunals, I think, for tribunals below deciding facts. And there's no reason to think that they ignored it. There's reason to think they weighed it against other things. Well, Your Honor, I think it was the fact that he wasn't taking medication should have been an obvious red flag that there was something wrong with Poe's mental state. I mean, in the medical records, it said, quote, Poe has thought about petitioning the court to allow him to represent himself. However, he recognizes doing so would be a mistake, given that he's facing a murder charge, unquote. But by the time of the canvass, he flipped. He totally disavowed making the statement. And he said the complete opposite. And this is direct evidence, Your Honor, that off his medication, Poe's mental illness just turned on a switch, right? Before, when he was on medication, he was rational and he understood the need for it. Sounds to me like you're trying to make without citing to it an Indiana versus Edwards argument. Correct, Your Honor, because Nevada hasn't adopted the findings. OK, but having asked you that and you having at least conceded partially my question, how does that make the Nevada Supreme Court's determination, non-reasonable determination of the law as articulated by the United States Supreme Court? They haven't mandated Indiana versus Edwards. No, they haven't, Your Honor. But the key point is that there are two separate standards. There's the Dusky standard for competency to stand trial. And there's a completely different standard under Feretta v. California for the knowing and intelligent waiver of counsel. And what we're arguing here is that there wasn't an adequate canvas to satisfy the requirements for Feretta. Now, since I have two minutes left, I'll reserve the rest of my time for rebuttals, Your Honor. All right. Thank you, counsel. Good afternoon, Your Honors. My name is Jerry Hardcastle. I'm a Deputy Attorney General for the State of Nevada, and I represent the defendants, or the respondents. May it please the Court, this Court should affirm the lower court's decision because the lower court reasonably concluded that the Nevada Supreme Court properly applied the correct legal standard as applied by the United States Supreme Court. Mr. Poe seems to argue that the Feretta canvas was flawed because the Court did not discuss his borderline competency, his history of mental illness. However, the records that the Court indicated it reviewed from Lakes Crossing thoroughly discussed Mr. Poe's history of mental illness. Although the Court that conducted the canvas clearly was, well, correct me if I'm wrong, but seemed clearly unaware of the prior either possible or actual schizophrenia diagnosis. Correct? No, Your Honor. I don't believe that is correct because in the records from Lakes Crossing, the doctors indicated that Mr. Poe said he was previously diagnosed. No, I understand what's in the record, but isn't your friend correct that the transcript of the hearing shows that the judge was laboring under a misapprehension of the facts? And isn't that what the Supreme Court of Nevada was pointing out in footnote one? Your Honor, I don't believe so. In the footnote, in the opinion, the Court basically in dicta is saying that district courts need to take reasonable steps to ensure that a defendant is competent. Okay, I'm reading the first sentence. It seems the district court judges in this case were not fully aware of the testimony elicited at the August 2011 competency hearing about Poe's history of schizophrenia. This is concerning. So I don't know that I would characterize that as dicta or anything else, but that seems to be what the Supreme Court is saying about the relevant, irrelevant hearing here. Isn't that a significant problem? It may not be a problem that causes us to reverse, but I mean, isn't that, shouldn't that be a matter of concern to us? It's a matter of concern. Yes, Your Honor. But as Your Honor stated, it's not reason for reversal because... Well, I didn't state that. I said it might not be. Let me make sure I understand factually what was going on here. Is it the case that it came out in the competency hearing that Poe was a diagnosed schizophrenic and he'd gone off his meds, but the judge who allowed him to waive counsel under Ferretta did not have the record that showed that? That's not a correct rendition of the facts, Your Honor. That's what I'm asking. Right. At the Ferretta canvas, the district court asked Mr. Poe if he was currently taking any medication, and he said that he was not taking any medication, that he had no need for it. Okay. Is the June 5, 2013 hearing the Ferretta canvas that we're all talking about? So maybe I'm misreading something here, but I'm looking at ER 1119. Do you have those pages, numbers? ER 1119, not directly in front of me. Okay. So this is page 10 of the transcript, and I think that's the hearing we're talking about. And the court says, now, as far as your mental history, my understanding is that basically you've been diagnosed as an antisocial personality disorder and narcissistic personality disorder, but otherwise you have not been found to be mentally ill. Is that true? And other than the is that true part, isn't that an inaccurate statement on a pretty important issue by the court? No, Your Honor, it's not, because what the doctors at Lakes Crossings determined was that he did not, he was not suffering from a severe mental illness. Those doctors determined, and those three doctors who observed him over several months determined that he had antisocial personality disorder, adjustment disorder, and paranoid personality disorder, but the doctors did not find any, did not find evidence of severe mental illness or paranoia. Let me ask you something. I'm getting more confused instead of less. There are no meds for antisocial personality disorder. It's kind of a fancy way of saying a really evil person, someone who's conscienceless and entirely unconcerned with harm to others or even enjoys it. Schizophrenic is a whole different thing. Schizophrenic, there is medication that treats it quite effectively now, and it's critical whether somebody is schizophrenic and if so, whether he's on or off his meds. So the judge doing the canvas knows that this fellow is not on meds, and he knows, but he doesn't know that he's been diagnosed as schizophrenic. So was he? I'm sorry, will you repeat? I'm not certain. The judge doing the canvas knows that Poe is not taking medicine for his mental state. Does that judge know, and is it the case that Poe was diagnosed as schizophrenic? No, Your Honor, because the Lakes Crossing doctors did not diagnose him as schizophrenic. But counsel, and I'm sorry to interrupt your answer to Judge Kleinfeld, but I'm looking, and I apologize, I don't have the date here, but I'm looking at ER 928, and I'm looking at Dr. Bent is being asked about what Mr. Poe's diagnosis was, and at the bottom of 928 he says, the psychiatrist had a number of different terms that they used for him, but one was psychosis not otherwise specified. In other places he had been described as having a delusional disorder, paranoid type, and then they used SPT, which he said he's not sure what the exact acronym means, but it's probably related to schizophrenia. So even if it's not in every report, doesn't this indicate that at least in some reports Mr. Poe was diagnosed as I think what most people would describe as a serious mental illness? Yes, it does indicate that, Your Honor, but even if we assume that Mr. Poe was a gray area defendant, a borderline competent defendant, that does not alter the analysis under Indiana v. Edwards. Indiana v. Edwards is a permissive holding. It does not require the states to deny a defendant's request to represent himself if he is borderline competent. That holding says that states may consider that and deny a defendant's request. But the standard that the Nevada State District Court and the Nevada Supreme Court applied is the Feretta standard, which is the correct legal standard that a waiver must be knowing and intelligent and voluntary. And the court's Feretta canvas, Mr. Poe's dishonesty with the court aside, does not indicate that he did not understand the nature of the crime. I'm sorry, when you say dishonesty, your reference is to someone who had been ordered to take or prescribed to take psychotropic medication and the person decides not to take psychotropic medication and is off his meds and then tells the judge that there's no meds, they've been prescribed? Is that the dishonesty you're referencing? Well, the dishonesty that I'm were his statements that he didn't have a history of mental illness and that he. But again, this is someone who had been prescribed psychotropic medication and was off his meds. He denied taking them, Your Honor. Yes. And whether that was honest or not is uncertain. But even if he was off of his medication, the Feretta canvas, as Your Honor's indicated, was abundantly thorough. The court had a thorough, in-depth conversation with Mr. Poe. The court asked Mr. Poe open-ended questions and his answers to those questions indicated that he understood the rights he was waiving. You're getting me a little bit confused as to what it is we're doing here, okay? And because we're reviewing whether or not the Nevada Supreme Court's decision is unreasonable under AEDPA. Yes. Okay. And if it's been said, been argued by both, at least by counsel on the other side, that it wasn't reasonable for the Supreme Court to defer to the trial court on the issue of the validity of Pew's waiver, is it an unreasonable interpretation of the facts? That's part of their argument, correct? Correct. If they're correct on that, can the Nevada Supreme Court's decision still be reasonable? Tell us why that is. In its order of affirmance, the Nevada Supreme Court stated, nothing in the record suggests that Poe's mental illness kept him from understanding the risks of self-representation or otherwise making a knowing, voluntary, and intelligent decision. So the court, upon reviewing the record from the trial court, the Nevada Supreme Court determined that there was no indication that Mr. Poe did not understand the risks of self-representation. That's a completely reasonable factual finding because nothing in the record does indicate. So the state's argument is, even if, as the Nevada Supreme Court at least implicitly noted that the trial court should have had more information, the state's position is that arguably or actually a better process that still is not an EDPA problem in the state's view. Yes, Your Honor. Yes, Your Honor. It's the state's position that Mr. Poe, that the Nevada Supreme Court reasonably determined that his waiver was knowing, voluntary, and intelligent. The court, there is abundant evidence in the record that Poe understood the nature of the charges. During the Feretta Canvas, he explained that he thought it was at first, it was a capital murder case, then it was an open murder case. And he talked about, he adequately answered questions about the nature of the charges. As far as the right to counsel, the court repeatedly discussed with Mr. Poe that he could have counsel represent him if he so choose. And the court also explained the role of standby counsel, but Mr. Poe said he did not want standby counsel. Mr. Poe demonstrated that he understood the range of possible punishments. The trial court adequately questioned him on that. Counsel, I've read what you're discussing and I understand it, but the thought has occurred to me in this case, I wonder where the prosecutor was in all this. Usually a good prosecutor will protect his record by making sure that the judge does not err. And I'm wondering, I would have thought the prosecutor would have alerted the judge to the history of schizophrenia that the judge didn't know about. Footnote 1 says the district judges in this case were not fully aware of the competency hearing testimony about Poe's history of schizophrenia. Is there any more that I should be looking at in the record or the decision to understand why in footnote 1 the Supreme Court says this is concerning, but they don't go on to say, but not concerning enough to make us overturn this conviction? Maybe the prosecutor did alert the court somewhere. Is there anything that explains why they didn't go beyond expressing concern? No, Your Honor. There is not anything other than the general history of the case. When the court granted Mr. Poe's request to represent himself, the court relied not just on records from Licks Crossing and not just on the Ferretta canvas, but from the entirety of the court's interactions with Mr. Poe. Was there any argument on appeal by Mr. Poe that the prosecutor, by not bringing this to the court's attention, had committed actionable prosecutorial misconduct as a ground for reversal? No, Your Honor, and there is no argument on appeal that Mr. Poe was not competent under Deskey. In sum, Your Honors, the Nevada Supreme Court applied the correct legal standard. All right. Thank you, counsel. Your Honors, I just want to go back to what Your Honor was talking about with the prosecutor. So before the second Ferretta canvas... I was not suggesting misconduct. Oh, no, no. I just want to review the history really quick. Before the second Ferretta canvas, Poe, when he was representing himself and he was off his medication, he fell apart. He engaged in bouts of hysterical laughter, and he meant that hysterical laughter to disrespect the court. He was removed from the court three times. On the last time out, he bit the marshal to the point that he was on medical leave for a month. It was at that point that the judge, the prosecutor... I'm sorry, the prosecutor was the one that moved that he be submitted for further competency, and everybody agreed. His Poe's own counsel did that, all right? And when he was ordered to submit to medical evaluation, he refused, and that's why he was sent back to Lakes Crossing, and when he came back, he asked for a second Ferretta canvas. This whole history was ignored in the second Ferretta canvas, and it showed that the court really didn't care too much that he was previously unable to represent himself. And then I just want to just, with my last minute, I want to just talk about why this waiver was so important. The waiver of counsel led to an unfair trial where Poe represented himself. He exerted a defense based off of delusions. Imagine being a juror, and you see Poe defend himself by talking about a conspiracy of truckers, and gas leaks, and eventually his son, all trying to kill him. And then he gets into the details of the crime. He testified traveling to Las Vegas because he received a desperate phone call from Selah, his daughter-in-law, alleging domestic violence from his son, Jerry Poe Jr. Now Poe testified that Jerry Jr. was driving Poe and two others on the highway when he starts talking, when Jerry Jr. starts talking about drowning, or nearly drowning to death, Selah. Poe testified that he got on Anne Road exit on I-15 North, and he thought that Jerry Jr. was driving him to the middle of nowhere to kill him, and that's when he pulled out his gun. All this was a hallucination. There is no Anne Road exit on I-15 North. If you traveled there yourself, your honor, there is no Anne Road exit. He made it up. It was a hallucination. Selah herself testified this drowning event never happened. And accordingly, your honor, the vast Supreme Court's decision was an unreasonable determination of facts, and contrary to established federal law, any jury would have seen that Poe was mentally ill. Thank you, your honor. All right. We thank counsel for their helpful arguments. The case just argued is submitted, and with that we are adjourned for the day.
judges: KLEINFELD, Fisher, BENNETT